**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| KIMBERLY TRIPLETT, | ) | |
| as representative of the wrongful death | ) | |
| class of decedent Keith Triplett, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:25-CV-01 SRW |
| | ) | |
| vs. | ) | |
| | ) | |
| KEEP TRUCKING, LLC, et al., | ) | |
| | | |
| Defendants. | | |

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on Defendants Keep Trucking, LLC and MDJ

Trucking Logistics, LLC's Motion for Summary Judgment (ECF No. 44), Defendant Marcus D.

Jethrow's Motion for Summary Judgment (ECF No. 47), Plaintiff's Motion to Exclude the

Opinions and Testimony of Expert Kevin Johnson (ECF No. 51), and Defendants' Motion to

Strike (ECF No. 63). All motions have been fully briefed. The parties have consented to the

jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. §

636(c).

## I.    BACKGROUND

On September 30, 2021 at approximately 4:14 p.m., Defendant Marcus D. Jethrow

(Defendant Jethrow), was operating a 2021 Volvo 760 tractor-trailer owned by Defendant Keep

Trucking, LLC (Defendant Keep Trucking) traveling northbound on US 61 Hwy in Marion

County, Missouri. At the same time, Mr. Keith Triplett (decedent) was operating a 1988

International Harvester grain hauler traveling east on County Road 338 in the process of crossing

US 61 Hwy. The vehicles collided, and Mr. Triplett died as a result.

On September 30, 2024, Mr. Triplett's wife, Plaintiff Kimberly Triplett, as representative of the wrongful death class of decedent, filed a petition in Marion County, Missouri, asking for actual and punitive damages, and asserting claims of (1) vicarious liability against the Defendants Keep Trucking and MDJ Trucking under *respondeat superior*; (2) negligence in hiring, training, supervising, retaining, and entrusting Jethrow against Defendant Keep Trucking; (3) negligence per se based on alleged violations of Federal Motor Carrier Safety Regulations and a Missouri statute against all Defendants; and (4) negligence against Defendant Jethrow. Plaintiff then removed this matter to federal court.

## II.    SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *Lombardo v. City of St. Louis*, 38 F.4th 684, 689 (8th Cir. 2022). The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Gannon Int'l, Ltd. V. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012) (citing *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)).

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

2

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." *Conolly v. Clark,* 457 F.3d 872, 876 (8th Cir.2006) (citing *Davidson & Assocs. v. Jung,* 422 F.3d 630, 638 (8th Cir.2005)). The nonmovant "must provide more than conjecture and speculation." *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022). Self-serving, conclusory statements without support are insufficient to defeat summary judgment. *Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of Minn.*, 109 F.4th 1033, 1038 (8th Cir. 2024).

"An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). "A fact is material if it 'might affect the outcome of the suit.'" *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Anderson*, 477 U.S. at 248). Though the Court is "required to make all reasonable inferences in the non-movant's favor while reviewing the alleged facts, we are not required to 'accept unreasonable inferences or sheer speculation as fact.'" *Maser v. City of Coralville, Iowa*, 139 F.4th 1004, 1008 (8th Cir. 2025) (quoting *Gilani v. Matthews*, 843 F.3d 342, 349 (8th Cir. 2016)). "In reaching its decision, a court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018) (internal quotation marks omitted).

## III.    UNDISPUTED MATERIAL FACTS[1]

On September 30, 2021, Defendant Jethrow was the driver of a 2021 Volvo 760 tractor-trailer. Defendant Jethrow was driving northbound on US 61 Hwy in Marion County, Missouri.

---

[1] The following facts are taken from the parties' statements of uncontroverted material facts and responses to such and are undisputed except where indicated.

At the same time, decedent Keith Triplett was driving a grain hauler east on County Road 338 in Marion County, Missouri in the process of crossing US 61 Hwy. Defendant Jethrow had the right of way as he was traveling northbound on US 61 Hwy. Decedent had the yield sign and failed to yield to oncoming traffic. Plaintiffs agree that anyone crossing US 61 Hwy must yield to traffic traveling in the northbound lanes of US 61 Hwy. Defendant Jethrow testified that he noticed decedent's grain hauler at the stop sign on the other side of the southbound lanes approximately ten seconds before the collision, maybe less. Defendant Jethrow then passed another tractor-trailer also traveling northbound on US 61 Hwy. Defendant Jethrow's tractor-trailer collided with decedent's grain hauler when decedent crossed onto US 61 Hwy, resulting in the death of decedent.

On September 30, Defendant Jethrow was acting within the course and scope of his employment. He was a commercial driver of approximately twenty years and in that time, had been involved in no accidents. His tractor-trailer was equipped with a video camera and Samsara ECM (engine control module which captures speed, throttle, and braking data) and ELD (electronic logging device which tracks a driver's hours of service). Defendant Keep Trucking used Samsara as its ELD service provider. The ELD system had an alert mechanism that notifies the carrier when a driver exceeds allotted drive time. Defendant Jethrow confirmed that the ELD system alerted the driver approximately thirty minutes before an hours of service violation and issued a violation notice if driving continued past the limit. On September 30, no message or alert was recorded by Defendant Keep Trucking regarding Defendant Jethrow exceeding his hours. There is ECM data and video from Defendant Jethrow's tractor-trailer of the collision. The posted speed limit on US 61 Hwy was 65 m.p.h. In the seconds before the collision, Defendant

4

Jethrow was travelling at an average speed of 69.61 m.p.h. There is also video that depicts the final 5.4 seconds before impact.

Defendant Jethrow was eligible to drive for eleven hours on the day of the collision. If a driver encounters adverse driving conditions, such as traffic, they are permitted to drive two more hours beyond the allowable time. On the day of the collision, the ELD log showed a "Yard Move — Traffic" entry beginning at approximately 9:08 a.m. CDT near La Vergne, Tennessee, and ending at approximately 11:13 a.m. CDT, a duration of two hours and five minutes. When driving resumed, it showed Defendant Jethrow eighteen miles East-Southeast of Paducah, Kentucky, 126 miles from where the yard move began. Traveling this distance required an average speed of approximately 63 m.p.h. during that time. Plaintiffs allege that the "Yard Move — Traffic" entry was incorrect and therefore, Defendant Jethrow was sixteen minutes over his allotted time when the collision occurred.

Following the collision, Sergeant James Mulkey conducted an accident reconstruction for the Missouri Highway Patrol. Based on his training, experience, and investigation, he opined that decedent failed to yield and drove across the path of the northbound traffic.[2] Plaintiff's retained expert, John Glennon, testified that he believes decedent traveled across the southbound lanes, did not come to a stop in the median crossover, and continued across the northbound lanes where the collision occurred. He further testified that, whether Defendant Jethrow was going the speed limit of 65 m.p.h. or going up to 70 m.p.h., because he did not lift his foot off the throttle 5.4 seconds before the collision, the collision would have occurred either way. Defendant's retained expert, Kevin Johnson, also testified that had Defendant Jethrow been traveling at the posted

---

[2] At the time Sergeant Mulkey issued his report, he was without the dashcam video or the ECM-derived speed, throttle, or braking data because that information was not downloaded until 2025.

speed of 65 m.p.h., the collision still would have occurred though it may have been even more catastrophic.

## IV.   DISCUSSION

In their motions for summary judgment, Defendants seek dismissal of all claims. As to punitive damages claim, Defendants argue there is no evidence that they intentionally harmed Plaintiff without just cause or that they acted with a deliberate and flagrant disregard for the safety of others. Further, Defendants assert Plaintiffs fail to meet their burden to prove that Defendant Jethrow was negligent or negligent per se or that Keep Trucking was independently negligent; Plaintiffs fail to meet their burden to prove negligent hiring, training, and supervision because Defendant Keep Trucking has admitted to liability under *respondeat superior*; and there is no basis for finding liability against MDJ Trucking Logistics.

### A.  Claims against Defendant MDJ Trucking Logistics, LLC in Count II

Count II of Plaintiffs' Petition asserts that Defendant MDJ Trucking is vicariously liable for Defendant Jethrow's negligence pursuant to the principles of agency and *respondeat superior*. ECF No. 7 ¶ 36. The uncontested facts show Defendant Jethrow was working for Defendant Keeping Trucking at the time of the accident, not Defendant MDJ Trucking, despite alleging otherwise in the Complaint. Both Defendant Keep Trucking and Defendant Jethrow admit this fact. Additionally, Defendant Jethrow denied performing any work on behalf of Defendant MDJ Trucking at the time of the collision. ECF No. 45. Plaintiffs do not respond to or contravene this argument in their Response. ECF No. 57. Plaintiffs have failed to establish any theory of liability applicable to Defendant MDJ Trucking and therefore, Defendant MDJ Trucking is entitled to summary judgment.

### B.  Claims against Defendants Keep Trucking, LLC and Jethrow for Punitive Damages in Counts I and II.

Missouri law applies in this diversity lawsuit. *See Cleek v. Ameristar Casino KC, LLC*, 47 F.4th 629, 634-635 (8th Cir. 2022). In Missouri, "[p]unitive damages are designed to inflict punishment and to serve as an example and a deterrent to similar conduct." *Dugan v. Hyatt Corp.*, 707 S.W.3d 669, 687 (Mo. Ct. App. 2024) (citing *Call v. Heard*, 925 S.W.2d 840, 849 (Mo. banc 1996). Recovery of punitive damages in Missouri requires a plaintiff to "prove[] by clear and convincing evidence that the defendant intentionally harmed the plaintiff without just cause or acted with deliberate and flagrant disregard for the safety of others." Mo. Rev. Stat. § 510.261.1. "[P]unitive damages require a showing of a culpable mental state on the part of the defendant, either by a wanton, willful or outrageous act or reckless disregard (from which evil motive is inferred) for an act's consequences." *Scott v. Dyno Nobel, Inc.*, 108 F.4th 615, 632 (8th Cir. 2024) (quoting *Burnett v. Griffith*, 769 S.W.2d 780, 787 (Mo. banc 1989)).

This claim must be proven by clear and convincing evidence. *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 714 (Mo. Ct. App. 2020) (citation omitted). "Clear and convincing evidence is that which tilts the scales in the affirmative when weighed against the evidence in opposition; evidence which clearly convinces the fact finder of the truth of the proposition to be proved." *Dugan*, 707 S.W.3d at 687–88 (cleaned up). "In short, a submissible case of punitive damages is made if the evidence and inferences drawn therefrom are 'sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity—that is, that it was highly probable—that the defendant's conduct was outrageous because of evil motive or reckless indifference.'" *Burdess v. Cottrell, Inc.*, 2023 WL 5721642, at *2 (E.D. Mo. Sept. 5, 2023) (quoting *Poage v. Crane Co.*, 523 S.W.3d 496, 515-516 (Mo. App. E.D. 2017)).

To prove the culpable mental state required, a plaintiff must demonstrate that "the defendant showed a complete indifference to or conscious disregard for the safety of others."

7

*Scott*, 108 F.4th at 632–33 (quoting *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 481 (Mo. banc 2021) (quotation omitted)). In negligence cases, "conscious disregard or complete indifference" is:

> an act or omission, though properly characterized as negligent, [that] manifest[s] such reckless indifference to the rights of others that the law will imply that an injury resulting from it was intentionally inflicted. Or there may be conscious negligence tantamount to intentional wrongdoing, as where the person doing the act or failing to act must be conscious of his conduct, and, [though] having no specific intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury. *Alack v. Vic Tanny Int'l of Mo., Inc.*, 923 S.W.2d 330, 339 (Mo. banc 1996) (quotation and emphasis omitted).

*Id.* at 633. When determining whether the issue of punitive damages should be submitted to a jury:

> a court must consider "whether the evidence – giving full play to the jury's right to determine credibility, weigh the evidence and draw justifiable inferences of fact – is sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity—that is, that it was highly probable—that the defendant's conduct was outrageous because of evil motive or reckless indifference."

*Dugan*, 707 S.W.3d at 688 (quoting *Ingham*, 608 S.W.3d at 715). "[C]areful judicial scrutiny is needed to determine whether the conduct was so egregious that it was tantamount to intentional wrongdoing." *Scott*, 108 F.4th at 633 (quoting *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 248 (Mo. banc 2001)).

The parties submitted statements of fact that alleged an accident between Defendant Jethrow and decedent occurred. The parties both refer to the 7-second video footage of Defendant Jethrow's tractor-trailer shortly before and at the time of the collision. ECF No. 49-2. The video shows the view looking forward from the front of the tractor-trailer. It records Defendant Jethrow traveling northbound on US 61 Hwy. Decedent's grain hauler is seen on County Road 338 crossing over the southbound lanes of US 61 Hwy and entering into the northbound lanes of US 61 Hwy while Defendant Jethrow was traveling northbound. It captures

8

a collision between Defendant Jethrow's tractor-trailer and the front of decedent's grain hauler, but the extent of the collision is not observed.

Plaintiffs argue Defendant Jethrow was traveling at a speed approximately 4 m.p.h. above the posted speed limit and that he should have reduced his speed because he should have seen decedent crossing US 61 Hwy. However, Plaintiffs have not shown by clear and convincing evidence that Defendant Jethrow acted with "deliberate and flagrant disregard for the safety of others." Mo. Rev. Stat. § 510.261.1. Nor is there clear evidence that "defendant's conduct was outrageous because of evil motive or reckless indifference." *Burdess*, 2023 WL 5721642, at *2.

Case law is instructive on the issue of punitive damages against Defendant Keep Trucking. In *James v. Moore*, 2025 WL 506546 (E.D. Mo. Feb. 14, 2025), this Court held there was no evidence to support punitive damages against the trucking company because it provided training to its drivers, the driver was familiar with Federal Motor Carrier Safety Administration regulations, and he was qualified to operate his vehicle. *Id*. at *3. The Court stated, "[t]his is not a case in which [the driver] had demonstrated dangerous proclivities in operating his vehicle, or that he had a poor driving record, or any other aggravating circumstances that would put [the company] on notice that it should take action against him." *Id*. at *3. Additionally, the driver "was well-trained with a Class A license in the State of Missouri since before 2016 and had a spotless driving record with no accidents or speeding tickets." *Id*. Similarly, the undisputed facts in this case show that Defendant Jethrow was qualified to operate his vehicle, Defendant Keep Trucking provided him training, he was familiar with the Federal Motor Carrier Safety Administration regulations, he had not demonstrated dangerous driving behavior in the past, and he had no prior accidents with other vehicles.

Defendants argue the evidence submitted by Plaintiffs fails to meet this high standard.

The Court agrees. Plaintiffs have not produced clear and convincing evidence to establish Defendant Keep Trucking or Defendant Jethrow intentionally harmed decedent without just cause or acted with deliberate and flagrant disregard for the safety of others.. The Court finds that, on this record, no reasonable juror could find by clear and convincing evidence that Defendants Jethrow or Keep Trucking intentionally harmed decedent without just cause or acted with deliberate and flagrant disregard for the safety of others or that they acted with an evil motive or with reckless disregard for the safety of decedent. *Dugan*, 707 S.W.3d at 687–88; Mo. Rev. Stat. § 510.261.1. Similarly, Plaintiffs have not presented sufficient evidence to support punitive damages against Defendant Keep Trucking because the company provided training to Defendant Jethrow, Defendant Jethrow was familiar with Federal Motor Carrier Safety Administration regulations, and he was qualified to operate his vehicle. For the reasons stated above, the Court will grant summary judgment to Defendants on Plaintiffs' claim of punitive damages.

## C. Claim for Negligent Hiring, Retention, Training, and Supervision against Keep Trucking in Count I

Plaintiffs further allege a claim of negligent hiring, retention, training, and supervision against Defendant Keep Trucking. ECF No. 7 ¶ 26. Defendant Keep Trucking argues the Court should dismiss Plaintiffs' claim against it because it has already admitted to *respondeat superior* liability.

In Missouri,

> Once vicarious liability for negligence is admitted under respondeat superior, the person to whom negligence is imputed becomes strictly liable to the third party for damages attributable to the conduct of the person from whom negligence is imputed. The liability of the employer is fixed by the amount of liability of the employee.

*McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995). Thus, it "is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability." *Id*.

However, the *McHaffie* court qualified its holding, noting that:

It may be possible that an employer or entrustor may be held liable on a theory of negligence that does not derive from and is not dependent on the negligence of an entrustee or employee … [I]t is also possible that an employer or an entrustor may be liable for punitive damages [that] would not be assessed against the employee/trustee.

*Id*. This "exception" to the general rule was addressed in the case of *Wilson v. Image Flooring, L.L.C.*, 400 S.W.3d 386, 393 (Mo. Ct. App. 2013) in which, as in this case, plaintiff pleaded a count against a defendant employer for negligent hiring, training and supervision of the employee. The court of appeals held that punitive damages may be sought where "an employer's hiring, training, supervision, or entrustment practices can be characterized as demonstrating complete indifference or a conscious disregard for the safety of others." *Id*. The court explained that "then the plaintiff would be required to present additional evidence [against the employer], above and beyond demonstrating the employee's negligence, to support a claim for punitive damages." *Id*.

Any claim for punitive damages must first be based on evidence supporting the underlying direct liability claim for negligent hiring, training and supervision. Additionally, the claim must be based on clear and convincing evidence that defendant acted either intentionally without just cause, "or acted with a deliberate and flagrant disregard for the safety of others." Mo. Rev. Stat. § 510.261.1. Indeed, "the need for a plaintiff to allege sufficient facts to support a punitive damages claim is arguably greater when the reason for doing so is to meet the exception and allow the plaintiff to proceed on claims that would otherwise be barred." *Wilson*, 400 S.W.3d at 393.

11

The Court previously determined that Plaintiffs have not submitted clear and convincing evidence that Defendant Keep Trucking acted intentionally without just cause or with deliberate and flagrant disregard for the safety of others. Thus, the *McHaffie* exception does not apply. Because Defendant Keep Trucking has admitted liability under *respondeat superior*, Plaintiffs may not proceed against it under a negligent hiring, training, and supervision claim as well. For this reason, the Court will grant summary judgment to Defendant Keep Trucking on this claim.

**D. Claims for Negligence Per Se against Defendants Jethrow and Keep Trucking in Counts I and II**

Plaintiffs also assert a claim of negligence per se against Defendants Jethrow and Keep Trucking. ECF No. 7 ¶ 27. Plaintiffs allege Defendants violated FMCS regulations including 49 C.F.R. §§ 390.3, 391.11, 392.2, 392.3, 395 and Mo. Rev. Stat. § 304.014. Defendants seek dismissal of Plaintiffs negligence per se claim because there is a lack of evidence establishing violations of the regulations.

To establish a claim for negligence per se, four requirements must be met: "1) a violation of a statute or ordinance; 2) the injured party must be within the class of persons intended to be protected by the statute or ordinance; 3) the injury complained of must be of the nature that the statute or ordinance was designed to prevent; and 4) the violation of the statute or ordinance must be the proximate cause of the injury." *Lowdermilk v. Vescovo Bldg. & Realty Co., Inc.*, 91 S.W.3d 617, 628 (Mo. Ct. App. 2002). "Negligence per se results from the violation of a statute and the jury is instructed on the statutory standard of care instead of the care of the reasonable person." *Cisco v. Mullikin*, 2012 WL 549504 at *2 (E.D. Mo. Feb. 21, 2012) (citing *Lowdermilk*, 91 S.W.3d at 628). "In addition to legislative enactments, courts may adopt the requirements of municipal ordinances and administrative regulations as the standard of conduct necessary to

12

avoid liability for negligence." *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 84 (Mo. Ct. App. 2012) (internal quotations omitted).

Plaintiffs allege Defendants violated the following:

a. 49 C.F.R. § 390.3 which requires motor carriers to be knowledgeable of and comply with all regulations applicable to it and requires them to instruct every driver and employee with regard to all applicable regulations.

b. 49 C.F.R. § 391.11 which prohibits a person from driving a commercial motor vehicle unless he is qualified to drive a commercial motor vehicle.

c. 49 C.F.R. § 392.2 which states, "Every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated. However, if a regulation of the Federal Motor Carrier Safety Administration imposes a higher standard of care than that law, ordinance or regulation, the Federal Motor Carrier Safety Administration regulation must be complied with."

d. 49 C.F.R. § 392.3 which provides that "no driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle."

e. Mo. Rev. Stat. § 304.014, which provides that "[e]very person operating or driving a vehicle upon the highways of this state shall observe and comply with the following rules of the road." Mo. Rev. Stat. § 304.014.

ECF No. 7.

On a claim for negligence per se, the statute must set out a statutory standard of care different from a standard applicable to negligence at common law. *Ware v. Wind Transp. Sols., Inc.*, 2025 WL 1642407, at *15 (E.D. Mo. June 9, 2025) (citing *Whittaker v. CRST Malone, Inc.*, 2019 WL 931966, at *1 (E.D. Mo. Feb. 26, 2019)). The regulations alleged above by Plaintiffs cannot form the basis for a negligence per se claim because they fail to set out a statutory standard of care different from the standard applicable to negligence. *See Cisco*, 2012 WL 549504, at *2 (statutes that required driving in "careful and prudent manner" and "highest degree of care" do not establish statutory standard of care and therefore do not support negligence per se claim).[3]

This Court in *Cisco*, similarly, dismissed negligence per se claims for 49 C.F.R. §§ 390.3, 392.2, 392.3, and Mo. Rev. Stat. § 304.014 because they do not "set[ ] out a statutory standard of care." *Id.*; *see also Sanford v. K&B Transportation, Inc.*, 2021 WL 2588902, at *2 (E.D. Mo. June 24, 2021) (granting summary judgment on negligence per se claims based on the court's reasoning and holdings in *Cisco*); *Monroe v. Freight All Kinds, Inc.*, 2020 WL 6588353, at *5 (W.D. Mo. Nov. 10, 2020) (same). In instances in which "a statute 'does not indicate specific conduct that constitutes a violation, and does not set out a statutory standard of care,' it cannot be the basis of a negligence per se claim." *Malcich v. St. Louis Cnty*, 2021 WL 3633703, at *3 (E.D. Mo. Aug. 17, 2021) (quoting *Whittaker*, 2019 WL 931966, at *1).

---

[3] *See also Almanzar v. Eaglestar*, 2021 WL 7184209, at *5 (W.D. Tex. Dec. 21, 2021) (noting it is unclear how 49 C.F.R. § 390.3 differs from a general reasonableness standard and granting summary judgment on that claim); *Ellis v. Klawonn*, 2023 WL 3993043, at *5 (E.D. Tex. June 8, 2023) (as to 49 C.F.R. § 391.11, "[a]t most, FMCSR § 390.11 imposes a *duty* on both the driver and carrier, but it does not impose any particular *standard of care*; because a statute must impose a standard of care higher than ordinary negligence, § 390.11's command as to *who* has a duty rather than the *standard* for breach of that duty means Plaintiffs' negligence per se claim fails as a matter of law.").

14

For the reasons stated above, the Court will grant summary judgment in favor of Defendants on the per se negligence claims for violations of 49 C.F.R. §§ 390.3, 391.11, 392.2, 392.3, and Mo. Rev. Stat. § 304.014, and dismiss those claims.

Finally, Plaintiffs also allege Defendants violated 49 C.F.R. § 395 but do not cite to a specific regulation of § 395. This claim for negligence per se will be dismissed because Plaintiffs do not allege the violation of a specific regulation. Instead, 49 C.F.R. § 395 refers to entire parts of the Federal Motor Carrier Safety Regulations and therefore shall be dismissed. *See Cisco*, 2012 WL 549504, at *2. For these reasons, the Court will also grant summary judgment to Defendants on Plaintiff's negligence per se claims for an alleged violation of 49 C.F.R. § 395.

### E.  Claim of Negligence against Defendant Jethrow in Count II

Plaintiffs allege a claim of negligence against Defendant Jethrow, alleging he failed to exercise the highest degree of care, failed to conduct himself in a careful, prudent and lawful manner, and was negligent and reckless in the operation of a commercial motor vehicle in one or more of the following respects: (a) failing to keep careful lookout; (b) failing to slow and/or make reasonable effort to avoid vehicles ahead of him on the roadway; (c) operating a commercial motor vehicle in a fatigued, ill and/or impaired condition; (d) operating a commercial motor vehicle while distracted; (e) permitting his motor vehicle to strike another vehicle; and (f) failing to maintain control of his motor vehicle. ECF No. 7 ¶ 24. Defendants' assert that decedent was the sole proximate cause of his own death by failing to yield the right of way to oncoming traffic, and that the evidence establishes that Defendant Jethrow was operating lawfully, maintained a proper lookout, and took immediate evasive action when confronted with a sudden and unavoidable hazard created solely by decedent.

"Under Missouri law, to succeed on a claim of negligence, a plaintiff must show that (1) the defendant owed plaintiff a duty of care, (2) the defendant breached that duty, (3) plaintiff suffered an injury proximately caused by the defendant's breach." *Childress v. Wal-Mart Stores E. I, LP*, 2025 WL 1547641, at *6 (E.D. Mo. May 30, 2025) (citing *Cleek*, 47 F.4th at 635–36; *see also D.J. ex rel. R.J. v. First Student, Inc.*, 707 S.W.3d 581, 586 (Mo. banc 2025) *reh'g denied* (Apr. 1, 2025) ("In an action for negligence, the plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach was causally connected to the plaintiff's injury.").

The threshold matter in a negligence action is the existence of a duty. *Webb v. Medicalodges, Inc.*, 728 F. Supp. 3d 1019, 1024 (W.D. Mo. 2024) (citing *Carman v. Wieland*, 406 S.W.3d 70, 76 (Mo. Ct. App. 2013)). "The existence of a duty is unique among the elements of negligence because it is a question of law for the court to decide and hence this question is central to determining whether a party has a right to judgment as a matter of law." *Id. See also Morrison v. Kubota Tractor Corp.*, 891 S.W.2d 422, 425 (Mo. Ct. App. 1994) ("In a negligence action, whether a duty exists is entirely a question of law for the court."). "Where no duty is indicated by Missouri statute, case law, or otherwise, a fundamental prerequisite to establishing negligence is absent." *Winningham v. Swift Transp. Co.,* 502 F. Supp. 2d 1016, 1019 (W.D. Mo. 2007) (quoting *Ford v. GACS, Inc.,* 265 F.3d 670, 682 (8th Cir. 2001)).

Under Missouri law "[e]very motorist entering an intersection has a duty to exercise the highest degree of care to maintain a careful lookout both ahead and laterally." *Drake v. Old Dominion Freight Line, Inc.*, 2024 WL 4679068, at *5 (E.D. Mo. Nov. 5, 2024) (quoting *Rill v. Trautman,* 950 F. Supp. 268, 272 (E.D. Mo. 1996)). "To fulfill this duty, [a] defendant '[is] required to look in such an observant manner as to enable him to see what a person in the

16

exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances.'" *Id.* (quoting *Rill,* 950 F. Supp. at 272). The court further explained in *Hudson v. Whiteside,* 34 S.W.3d 420, 427 (Mo. Ct. App. 2000):

> "This duty is not fulfilled by 'obeying a traffic signal and then proceeding into the intersection without making careful observations to determine whether there is no cross traffic in or so near to the intersection as to constitute an immediate danger.'" *Riscaldante v. Melton,* 927 S.W.2d 899, 902 (Mo. App. 1996). To make a submissible case for failure to keep a careful lookout, the plaintiff must establish "that the [driver] saw or could have seen [the plaintiff] in time to have avoided the collision." *Id.* In determining what the defendant saw or could have seen, the defendant is "held to have seen what looking would reveal." *Witt v. Peterson,* 310 S.W.2d 857, 860 (Mo. 1958).

Defendant Jethrow, as the operator of the tractor-trailer, had a duty to exercise the highest degree of care when driving. *See Rill,* 950 F. Supp. at 272. This duty included keeping a lookout for vehicles entering the intersection laterally such as decedent's grain hauler. *See id.* "The inquiry is two-fold: if the driver was keeping a careful lookout, could the driver have seen the danger; and, if the driver could have seen the danger, did the driver have the ability to take some precautionary measure such as veering, utilizing a horn, or slowing speed to prevent the accident? The evidence must support a finding that a driver had the means and ability to have avoided a collision." *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. 2010) (citing *Thurman v. Anderson,* 693 S.W.2d 806, 807 (Mo. banc 1985)). "Means and ability include sufficient time and distance considering the movement and speed of the vehicles." *Id.* Defendant Jethrow testified that as he was traveling northbound on US 61 Hwy, he could see decedent in the distance traveling east on County Road 338, not yet crossing over the southbound lanes of US 61 Hwy, and thought decedent was going to stop before crossing the highway. ECF No. 63-1. Defendant Jethrow then testified he began to maneuver to pass another tractor-trailer and once that pass was complete and he "look[ed] back forward, the red truck was right there in front of"

17

him. *Id*. Defendant Jethrow then testified that he hit his brakes and turned his wheel to the right and swerved to avoid a collision. *Id*.

It is undisputed that decedent's death was caused by the collision between his grain hauler and Defendant Jethrow's tractor-trailer. The inquiry then becomes whether the injury was "a reasonable and probable consequence of the act or omission of the defendant." *Jenkins v. N. Cnty. Gen. Surgery*, 2022 WL 3107231, at *6 (E.D. Mo. Aug. 4, 2022) (quoting *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 863, 865 (Mo. 1993)). Here, Plaintiff's retained expert testified that he believes decedent traveled across the southbound lanes, did not come to a stop in the median crossover and, failing to yield, continued across the northbound lanes where the collision occurred. He further testified that had Defendant Jethrow been traveling at the posted speed of 65 m.p.h., the collision still would have occurred though the truck may have hit a different section of decedent's grain hauler. ECF No. 55-2. Defendant's expert also testified that had Defendant Jethrow been traveling at the posted speed of 65 m.p.h., the collision still would have occurred though it may have been even more catastrophic. ECF No. 55-1.

Plaintiffs argue that it should be up to a jury to determine whether Defendant Jethrow met his own independent duty of care as a commercial motor vehicle operator. The Court agrees. Plaintiffs point to the ECM data that shows Defendant Jethrow was traveling between three and five m.p.h. over the posted speed limit, the log records that show Defendant Jethrow was sixteen minutes over his hours-of -service allotment, and that Defendant Jethrow was on a phone call over a headset before and during the collision. Plaintiffs further allege that Defendant Jethrow was operating the vehicle in a fatigued, ill and/or impaired condition, or while distracted and those facts show a breach of duty. Defendant Jethrow testified he was on a phone call over a headset at the moment of the collision. ECF No. 63-1.

18

The Court finds there is a genuine dispute of material fact. In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC*, 76 F.4th 753, 757 (8th Cir. 2023). Plaintiffs provide enough to show there is a genuine dispute of material facts as to whether Defendant Jethrow failed to exercise the highest degree of care, failed to conduct himself in a careful, prudent and lawful manner, and was negligent and reckless in the operation of a commercial motor vehicle when he struck and killed decedent. As a result, summary judgment on this claim will be denied.

## V.    DEFENDANTS' MOTION TO STRIKE

Rule 56(c)(2) provides that a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Defendants seek to strike certain facts and responses to facts of Plaintiff's in her Statement of Additional Uncontroverted Material Facts because Plaintiff relied upon an expert report to support such facts, and the report is hearsay and thus not admissible.

Rule 56(c)(4) states "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e)." *DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 825–26 (8th Cir. 2009 (quoting *Shanklin v. Fitzgerald,* 397 F.3d 596, 602 (8th Cir.2005)). "Documents that are not authenticated cannot be considered." *Daud v. Nat'l Multiple Sclerosis Soc'y*, 2019 WL 3082467,

19

at *3 (W.D. Mo. July 15, 2019) (citing *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 635 n.20 (8th Cir. 2000)).

However, the Eighth Circuit holds that "[s]ubsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment." *DG&G*, 576 F.3d at 826 (quoting *Maytag Corp. v. Electrolux Home Products, Inc.*, 448 F. Supp. 2d 1034, 1064–65 (N.D. Iowa 2006) *aff'd*, 224 F. App'x 972 (Fed. Cir. 2007)). "[W]here the expert has been deposed, and in the course of such deposition, has reaffirmed opinions stated in the unsworn report, the parties have had a full and fair opportunity to address the basis and admissibility of the expert's opinions as summarized in the unsworn report." *Maytag Corp.*, 448 F. Supp. 2d at, 1064–65. "Therefore, while an unsworn expert report, standing alone, does not constitute admissible evidence that can be considered at the summary judgment stage of the proceedings, and will not defeat a motion for summary judgment, an unsworn expert report may be considered at summary judgment where the opinions therein are otherwise adopted or reaffirmed in an admissible affidavit or deposition testimony by the expert." *Id*. at 1065. The Court will then only consider those parts of retained expert witness, John Glennon's, report which were referenced and testified to at his deposition.

## VI.    PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DEFENSE EXPERT KEVIN JOHNSON

Finally, Plaintiffs ask the Court to exclude the opinions and testimony of the Defendants' retained accident reconstruction expert witness, Kevin Johnson, for both Rule 26(a)(2)(B) and *Daubert* reasons.

### A.  Legal Standard

"To begin, all rulings by this Court on *Daubert* motions are preliminary in nature. The Court's rulings are subject to change based on the evidence and testimony presented during trial." *Foscato v. Chaparral Boats, Inc.*, 2023 WL 3681479, at \*1 (W.D. Mo. Apr. 20, 2023). Federal Rule of Evidence 702 and the standards set forth in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), govern the admissibility of expert testimony in federal court. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Rule 702's screening requirement has been boiled down to a three-part test. First, the testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant. Second, the expert must be qualified to assist the finder of fact. Third, the testimony must be reliable or trustworthy in an evidentiary sense." *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021) (internal quotations and citations omitted).

As to the first requirement, an expert's opinion lacks relevance if it does not fit the facts of the case. *McMahon v. Robert Bosch Tool Corp.*, 5 F.4th 900, 903 (8th Cir. 2021). However, "Rule 702 is 'satisfied where expert testimony advances the trier of fact's understanding to any degree.'" *United States v. Perry*, 61 F.4th 603, 606 (8th Cir. 2023) (quoting *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006)). As to the second requirement, a witness may be qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Thus, an expert is qualified if, for example, her degrees and training gave her competence

for the subject area of her testimony. *Perry*, 61 F.4th at 606. "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility," and "the weight given to witness testimony is the province of the jury." *Id.* (quoting *Robinson*, 447 F.3d at 1100). Third, the testimony must be reliable. *Daubert*, 509 U.S. at 589 (A district court must ensure that testimony admitted under Rule 702 "is not only relevant, but reliable.").

When making the reliability determination, a court may evaluate whether the expert's method has been tested or subjected to peer review and publication, the method's known or potential rate of error, and the method's general acceptance. *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (citing *Daubert*, 509 U.S. at 593–94). These factors are not exhaustive, and a court must evaluate the reliability of expert testimony based on the facts of the case. *Id.* A court also may consider "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2008) (quoting *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686-87 (8th Cir. 2001)). When weighing these factors, a district court must function as a gatekeeper to separate "expert opinion evidence based on good grounds from subjective speculation that masquerades as scientific knowledge." *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001) (internal quotation omitted). Expert testimony is not admissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case," *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006), such that the testimony is "so fundamentally unsupported that it can offer no assistance to the jury." *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir.

22

2006) (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 864 (8th Cir. 2004)). But disputes about the factual basis of an expert's testimony ordinarily implicate the credibility—not the admissibility—of the testimony. *Sappington*, 512 F.3d at 450; *see also Minn. Supply*, 472 F.3d at 544.

Due to the liberalization of expert testimony admission standards signaled by *Daubert* and its progeny, and the codification of this trend in Rule 702, the Eighth Circuit has held that expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) ("*Daubert* and Rule 702 thus greatly liberalized what had been the strict ... standards for admission of expert scientific testimony.").[4] As long as the expert testimony "rests upon good grounds, based on what is known, it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id*. (internal quotation omitted). The exclusion of expert testimony is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (internal quotation omitted). The proponent of expert testimony must prove its admissibility by a preponderance of the evidence. *Lauzon*, 270 F.3d at 686; Fed. R. Evid. 702. The determination as to the admissibility of expert testimony is within a district court's sound discretion. *See Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997).

### B. Discussion

Kevin Johnson holds A.C.T.A.R. (Accreditation Commission for Traffic Accident Reconstruction) credentialing. He is the retained expert witness for Defendants and created an

---

[4] *See also Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 954 (8th Cir. 2000) ("doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility"); *Robinson*, 447 F.3d at 1100 (requirement that expert testimony must assist the trier of fact "is satisfied where expert testimony advances the trier of fact's understanding to any degree") (internal quotation marks omitted).

accident reconstruction report. Plaintiffs move for exclusion of expert witness Kevin Jonson because (1) Johnson performed an avoidability calculation at the posted speed limit, obtained a specific numerical result, decided it wasn't important, and disclosed neither the calculation nor its result in his Rule 26 expert report, revealing both for the first time under cross-examination; (2) Johnson's perception-response time analysis employs a circular methodology structurally incapable of producing any result other than the one he reached, and the post-hoc justification he offered to explain his inflated output appears nowhere in his written report; and, (3) Johnson applied traffic standards to condemn the decedent's conduct while simultaneously disclaiming expertise to apply the equivalent commercial driver standard to Defendant Jethrow. Defendants respond that Plaintiffs now attempt to exclude Mr. Johnson based on alleged deficiencies that, even if accepted as true, do not implicate the reliability of his methodology but instead go to the weight and credibility of his opinions, not exclusion under Federal Rule of Evidence 702 or *Daubert* principles.

First, Plaintiffs allege that Johnson performed an avoidability calculation of what would have occurred if Defendant Jethrow had been traveling at exactly the posted speed limit of 65 m.p.h. and then suppressed it, not complying with required disclosures in Rule 26(a)(2)(B). Rule 26 requires the written report of a retained expert to contain "the facts or data considered by the witness in forming them." Fed R. Civ. P. 26(a)(2)(B). As recently outlined in *Ecolab*,

> But what precisely does "considered" mean, and does the factual information reflected in these interview notes meet that definition? This Court is unaware of any decisions within this District defining the word "considered" as used in Rule 26(a)(2)(B). However, decisions from other jurisdictions have largely (though not exclusively) coalesced around a single interpretation. "The courts have embraced an objective test that defines 'considered' [in Rule 26(a)(2)(B)] as anything received, reviewed, read, or authored by the expert, before or in connection with the forming of his opinion, if the subject matter relates to the facts or opinions expressed." *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 470 (S.D.N.Y. 2016) (quoting *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, 2007 WL 1560277, at *4 (N.D. Ohio May 29, 2007)) (alteration in original).

*Ecolab Inc. v. IBA, Inc.*, 2026 WL 1204640, at *3 (D. Minn. Jan. 21, 2026), *aff'd*, 2026 WL 1194889 (D. Minn. May 1, 2026) (emphasis added).

Here, Defendants assert Mr. Johnson's testimony and his report show that he applied standard accident reconstruction methodology to determine whether the tractor-trailer's speed had an impact on the collision and determined that it did not, i.e. the accident still occurs if he was going the speed limit. In his report, Mr. Johnson analyzed multiple data points to reach his conclusions in this case which would include but are not limited to: physical evidence on the roadway, damage patterns, distances traveled, electronic data from the vehicle showing speeds and braking, and the video of the collision and the event prior thereto. ECF No. 52-1. Using these multiple data points and analyzing the collision, Mr. Johnson eventually concluded that "[b]ased on our calculations, the speed of the Jethrow Volvo tractor-trailer combination, which was reported as being approximately three to five miles above the posted speed limit of 65 miles per hour, did not contribute to the cause of this collision." *Id*.

The ability to rule out other possibilities is a factor commonly applied to determine the admissibility of expert opinion. *Lauzon*, 270 F.3d at 693. "Yet, this requirement cannot be carried to a quixotic extreme." *Id*. Mr. Johnson's report contained his analysis of available data and after performing accident reconstruction calculations, determined that Defendant Jethrow's speed did not cause the accident. Plaintiffs present no evidence that Mr. Johnson or Defendants suppressed anything here or that they did not comply with required disclosures in Rule 26(a)(2)(B). Therefore, the Court will not exclude his opinion on Plaintiffs' first point of argument.

Plaintiffs also take issue with the perception-response time analysis done and the traffic standards applied. Mr. Johnson focused his reconstruction analysis on a moment in time that the decedent was a hazard – i.e. when he was in the median failing to yield. Plaintiffs' expert,

25

meanwhile, focused his reconstruction analysis on a ten second window prior to the collision. Just because these analyses are different, challenges to the factual basis of Mr. Johnson's testimony go "to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Tech, Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001)). Plaintiffs have not shown as much.

Following the 2023 amendment, the proponent must show "that it is more likely than not that the proffered testimony meets the admissibility requirements" of Rule 702. *Richardson v. Unites States*, 2026 WL 579508, at *2 (W.D. Mo. Mar. 2, 2026) (citing Advisory Committee notes to 2023 amendment); *see also CIS Comm'cns, LLC v. Republic Servs., Inc.*, 2025 WL 2958462, at *3 (E.D. Mo. Sept. 26, 2025). The rules for the admissibility of expert testimony favor admission over exclusion. *Id.* (citing *Moore v. Wilson Logistics, Inc.*, 2025 WL 1783770, at *2 (W.D. Mo. Feb. 6, 2025) (noting that Rule 702 "is not a rule of exclusion" and that "cases are legion that, correctly under *Daubert*, call for the liberal admission of expert testimony" (quotation modified)); *Lauzon*, 270 F.3d at 686).

This Court agrees that the other arguments raised by Plaintiffs' motion go to credibility and the weight of the testimony which are subjects that may be raised during cross-examination. Generally, the challenge to the factual basis of an expert's testimony goes to its credibility rather than its admissibility. *Acosta v. Acosta*, 725 F.3d 868, 874 (8th Cir. 2013) (quoting *Minn. Supply* 472 F.3d at 544). Counsel for the opposing party must examine the factual basis for the opinion in cross-examination. *Id*. The parties will have the opportunity to present evidence of their positions based on the evidence, testimony, and cross-examination of witnesses during trial.

26

Expert testimony must be excluded only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury. *Children's Broad. Corp.*, 357 F.3d at 865. The Court finds Defendants' retained expert may be relevant under Fed. R. Evid. 702 and finds no basis to exclude them under *Daubert.*

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Keep Trucking LLC and MDJ Trucking Logistics LLC's Motion for Summary Judgment (ECF No. 44) is **GRANTED**. All claims against Defendants Keep Trucking LLC and MDJ Trucking Logistics LLC are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant Marcus D. Jethrow's Motion for Summary Judgment (ECF No. 47) is **GRANTED, in part, and DENIED, in part**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (ECF No. 63) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude the Opinions and Testimony of Defense Expert Kevin Johnson (ECF No. 51) is **DENIED.**

A separate judgment in accordance with this Memorandum and Order will be entered. So Ordered this 25th day of June, 2026.

_____
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**